J-A07027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| D.J.N. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| G.N. | |
| Appellee | No. 1370 WDA 2015 |

Appeal from the Order August 10, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 97-06360-004

BEFORE: BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.: **FILED JULY 7, 2016**

Appellant, D.J.N. (Mother), appeals from the August 10, 2015 custody order, which granted the petition for modification of the existing custody order filed by G.N. (Father), with respect to the parties' minor children. Upon careful review, we affirm.

Mother and Father are the parents of the following children: Mo.N., a female, born in September 2005; G.N., a male, born in August 2003; Ma.N., a female, born in March 2001; Br.N., a female, born in December 1999; and Ba.N., a female, born in June 1997 (collectively, the children).[1]

_____

[1] Mother has two older daughters from a prior relationship, B.P.1 and B.P.2. In addition, Mother is remarried and has one son, L.F., with her current husband. N.T., 7/30/15, at Joint Exhibit #1, ¶ 3. Father has a one-year-old
*(Footnote Continued Next Page)*

Because Ba.N. was eighteen years old at the time of the relevant proceedings, the order does not apply to her. However, as described below, the order is based, in part, on Mother's failure to supervise Ba.N. pursuant to the existing custody order and failing to advise Father when Ba.N. was pregnant and when she went into labor to deliver her child.[2] We summarize the history of this case as follows.

The underlying matter commenced in 2006, following the marital separation of Mother and Father. Since November 12, 2008, following an evidentiary hearing, Father has been exercising sole legal and primary physical custody of the children. Trial Court Order, 11/12/08, at ¶ 1. The trial court granted Mother partial physical custody of the children on alternating weekends from Friday after school until Monday morning before school. *Id.* at ¶ 2.[3]

The trial court set forth the ensuing procedural history as follows.

> The pertinent history begins with the October 30, 2013 custody order, wherein this [c]ourt [continued] Father['s] sole legal and primary physical custody of the children. This custody order expanded Mother's

*(Footnote Continued)* ————————————

child with his present girlfriend. *Id.* at ¶ 4. The record does not reveal if his child is male or female.

[2] Ba.N. gave birth in December 2014, when she was seventeen years old. N.T., 7/30/15, at 31.

[3] Since 2008, the Honorable Kathryn Hens-Greco has presided over the underlying custody matter, including the proceedings in this case.

custodial time by a day. Instead of receiving the children on alternating Fridays after school, Mother would receive them alternating Thursdays after school. Her custody time would end when the children left for school Monday morning. The [trial c]ourt further ordered that Mother supervise all of the children when they were in her custody.

Trial Court Opinion, 10/8/15, at 1-2 (citations to record omitted).

Specifically, the provision involving Mother's supervision of the children stated, "Mother shall be present at all times when the children are in Mother's custody. [Ba.N.], [Br.N.], [Ma.N.], [G.N.] and/or [Mo.N.] shall not be left alone with [L.G.],[4] [B.P.2] or [B.P.1], at any time, while the children are in Mother's custody." Trial Court Order, 10/30/13, at ¶ 5. By order dated May 16, 2014, the trial court clarified the foregoing provision, stating, "[t]he children may be dropped off under the supervision of their respective coaches if 2 children need to be in different locations at the same time -- or approximately the same time." Trial Court Order, 5/16/14, at ¶ 2.

In its opinion, the trial court continued as follows.

[I]n January 2014, [ ] Father brought an action for contempt and modification of the October 30, 2013 order. Th[e trial c]ourt put the matter before Hearing Officer Laura Valles upon Father's allegations that Mother allowed the children to be babysat by Mother's older, non-subject adult children, one of [whom] struggled with drug addiction, and that Mother allowed daughter Ba.N., then 15, to have a relationship with a 20-year-old man. Th[e trial

_____

[4] L.G. is Mother's niece, of whom she is the permanent legal custodian. N.T., 7/30/15, at 130-131, 140.

c]ourt adopted the hearing officer's Report and Recommended Order, which reinstated th[e trial c]ourt's October 30, 2013 custody order, and sanctioned Mother $500 for her contempt.[1]

Shortly thereafter, and once again upon allegations of Mother's lack of supervision, Father brought forth a petition for custody modification. Specifically, Father alleged that Mother allowed daughter Ba.N. to regularly spend the night with her 20-year-old boyfriend, which directly resulted in Ba.N.'s pregnancy. In light of these facts, th[e trial c]ourt restricted Mother's custodial time, on an interim basis, to alternating Saturdays and Wednesday evenings with no overnight time.[5] The matter was set for a custody trial … on September 9, 2014. The ensuing trial was continued three separate times before the matter was ultimately heard on July 30, 2015[.]

_____

[1] The custody order had been temporarily suspended until the hearing before the hearing officer.

Trial Court Opinion, 10/8/15, at 1-3 (citations to record omitted) (internal footnotes 2 & 3 omitted).

Father and Mother testified during the hearing on July 30, 2015. In addition, the four younger children, Br.N., age fifteen, Ma.N., age fourteen, G.N., nearly age twelve, and Mo.N., age nine, testified *in camera* in the presence of the parties' counsel.

Br.N. testified, "I would just like a little bit more time with my mom. It's like you miss her when you're away from her for so long. And I don't like only being with her for like a few hours a day." N.T., 7/30/15, at 173.

_____

[5] The *interim* order is dated June 26, 2014.

> THE COURT: And there was a time when you spent the night, and now you don't spend the night anymore. Is it better this way where you don't spend the night… ?
>
> [A.]: I think it's better that we spend like a few nights there.
>
> THE COURT: Why is that?
>
> [A.]: I don't know. I would just like to spend the night there.

*Id.* at 174.

Similarly, Ma.N. testified, "I wish I could see my mom more." *Id.* at 182. She testified that she liked spending the night at Mother's house, but she could not offer a reason why. *Id.* at 183. Further, Ma.N. testified with respect to the differences at Mother's and Father's homes, "[m]y dad, he's like a little more strict with like cleaning the house and stuff. And we just kind of do that on our own at my mom's house." *Id.* She also testified that Father "would just be more strict[] towards [her spending time with a boy]." *Id.* at 184.

G.N., the parties' only son, described the differences in Mother's and Father's homes as follows.

> My dad, he's probably just a little bit more like tough, like it's his way or the highway, like that kind. My mom she's like — she's not as tough, but she still kind of like disciplines you and stuff.

*Id.* at 192. G.N. testified that he misses Mother. *Id.* at 194. He testified, "I would like to start sleeping at her house again. I kind of miss that. And just have a couple more days with her." *Id.*

Mo.N., the youngest, testified that she does not like, "[h]ow I get to see my mom less and I get to see my dad more." *Id.* at 199.

> THE COURT: [S]o you say that seeing your mom less than what you see your dad is harder for you?
>
> [A.]: Yeah.

*Id.*

On August 10, 2015, the trial court essentially made final the existing *interim* custody order. Specifically, the subject order granted Father primary physical and sole legal custody, and Mother partial physical custody on alternating Saturdays, from 12:00 p.m. to 5:00 p.m., and, on alternating Wednesdays, from 5:00 p.m. to 8:00 p.m., to correspond to the week Mother does not have custody on Saturday. The order states, "Mother shall not exercise any overnight custodial periods with the children." Trial Court Order, 8/10/15, at ¶ 3. However, the order provides that Mother and Father "may take two consecutive or non-consecutive weeks of vacation with the children during the summer vacation from school." *Id.* at ¶ 13. The order also sets forth a holiday schedule. Importantly, the order provides, "Mother shall be present at all times when the [four younger] children are in Mother's custody. [Br.N.], [Ma.N.], [G.N.] and/or [Mo.N.] shall not be left alone with

[L.G.], [B.P.1] or [B.P.2], at any time, while the children are in Mother's custody." *Id.* at ¶ 4.

On September 8, 2015, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i). The trial court filed its Rule 1925(a) opinion on October 8, 2015.

On appeal, Mother presents the following questions for our review.

> I. Whether the [t]rial [c]ourt committed an error of law and/or abused its discretion in denying [Mother's] Petition for Modification of Custody?[6]
>
> II. Whether the [t]rial [c]ourt committed an error of law and/or abused its discretion in allowing [Father] to continue to have primary physical and legal custody of the children?
>
> III. Whether the [t]rial [c]ourt committed an error of law and/or abused its discretion in not allowing [Mother] to have overnight custodial periods with the children?
>
> IV. Whether the [t]rial [c]ourt committed an error of law and/or abused its discretion by requiring [Mother] to be present with all children at all times while in her custody[?]

_____

[6] The trial court notes that Mother "did not petition the [c]ourt for custody modification. Initially, Mother sought to modify the interim custody [order] by requesting that the trial court revert the parties back to their October 30, 2013 custody order. It is clear from her Amended Pretrial Statement, however, that Mother ultimately requested primary physical and shared legal custody." Trial Court Opinion, 10/8/15, at 4 (citations to record omitted).

V. Whether the [t]rial [c]ourt committed an error of law and/or abused its discretion by failing to consider the children's best interests in light of:

a. Parental duties performed by [Mother] on behalf of the children;

b. The ability of extended family while with [Mother];

c. The well-reasoned preference of the children based on the children's maturity and judgment;

d. The proximity of the residences of the parties involved;

e. [Mother's] ability to care for the children or ability to make appropriate child-care arrangements.

Mother's Brief at viii-ix.

We review Mother's issues according to the following scope and standard of review.

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> ***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting ***Bovard v. Baker***, 775 A.2d 835, 838 (Pa. Super. 2001)).  Moreover,
>
> > [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
> >
> > The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> ***R.M.G., Jr., supra*** at 1237 (internal citations omitted).  The test is whether the evidence of record supports the trial court's conclusions.  ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child.  "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340.  Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) … when entering a custody order."

*J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

This statutory section provides as follows.

> **§ 5328. Factors to consider when awarding custody.**
>
> **(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.
> >
> > (4) The need for stability and continuity in the child's education, family life and community life.
> >
> > (5) The availability of extended family.
> >
> > (6) The child's sibling relationships.
> >
> > (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

We have further explained as follows.

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23

Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). …

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, *supra* at 822-823. Instantly, the trial court considered the Section 5328(a) custody factors on the record in open court at the conclusion of the testimonial evidence, as well as in its Rule 1925(a) opinion. *See generally* N.T., 7/30/15, at 208-217; Trial Court Opinion, 10/8/15, at 5-12.

On appeal, Mother's issues are interrelated, such that we review them together. Mother argues that the trial court abused its discretion with respect to its findings and/or the weight it assigned to Section 5328(a)(3), the parental duties performed by each party; Section 5328(a)(5), the availability of extended family; Section 5328(a)(6), the child's sibling relationships; Section 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgment; Section 5328(a)(11), the proximity of the residences of the parties; and Section 5328(a)(12), each

- 12 -

party's availability to care for the child or ability to make appropriate child-care arrangements.

The trial court found significant the following factors and weighed them in favor of Father: Section 5328(a)(1), (2), (3), (4), (5), (10), and (12). Specifically, in discussing Section 5328(a)(12), the trial court stated:

> If there was a singular problem that propelled this custody litigation, it was Mother's repeated decisions regarding child-care arrangements. Even before Ba.N.'s pregnancy, the parties would appear in motions court on allegations that Mother left the children unattended. Th[e trial c]ourt does not dismiss the level of conflict that has arisen from this single issue. Over the history of this case, Mother has evidenced a history of allowing her children to go unsupervised and maintain inappropriate relationships with adults. Mother's poor decision-making in this area has placed a great strain on this family.

Trial Court Opinion, 10/8/15, at 11-12. The record supports the trial court's findings.

Indeed, by order dated May 15, 2014, the trial court adopted the custody master's recommendation finding Mother in contempt of the October 30, 2013 order, in part, for leaving the children alone with L.G., B.P.1, or B.P.2. The record includes criminal dockets involving B.P.1, which reveal charges arising in 2014 with respect to illegal drugs, theft, and disorderly conduct. N.T., 7/30/15, at Exhibit R. Mother acknowledged on cross-examination that B.P.1 "has a heroin problem." *Id.* at 163. Mother testified B.P.1 does not reside with her, and she promised never to leave the children alone with B.P.1. *Id.* at 163-164.

- 13 -

The trial court's finding under Section 5328(a)(2), which provides in relevant part, "which party can better provide adequate physical safeguards and supervision of the child," is related. 23 Pa.C.S.A. § 5238(a)(2). The trial court explained that it "does question Mother's ability to properly supervise the children. It is a concern that directly led to the interim suspension of Mother's overnight visitations back in June 2014." Trial Court Opinion, 10/8/15, at 6. Specifically, the trial court stated the following.

> Since October 2013, th[e trial c]ourt ordered Mother on four separate occasions not to leave her children unattended. Th[e trial c]ourt finds that Mother's lack of supervision over Ba.N. contributed to the child's teen pregnancy.
>
> Father had forbidden Ba.N. from dating her boyfriend, who was four to five years her senior and a legal adult. At best, Mother turned a blind eye to their relationship. Although she testified to the contrary, Mother evidently condoned Ba.N. sleeping over her boyfriend's house on several occasions. At one point, Mother and Ba.N. had a verbal fight[,] and Ba.N. left Mother's house with the boyfriend. Only after Ba.N. did not return for *days* did Mother text Father….
>
> …
>
> Whether Mother actively allowed Ba.N. to see her boyfriend, which would have been a violation of the supervision requirement of the custody order, or, whether Mother passively let Ba.N. run away for days, which would still have been a violation of the supervision requirement of the custody order, the result was the same: a teen pregnancy. … While Ba.N. is now a legal adult, the [trial c]ourt's concerns are not alleviated, as there are still four other children, two of [whom] are teenage girls. As such,

- 14 -

> th[e trial c]ourt was left with no recourse but to order that [Mother shall be present at all times when the four younger children are in Mother's custody]. The effect of th[e trial c]ourt's order is that Father can know exactly where the children are and whether they are safe. Given the Mother's prior decision-making, the provision[] within the [trial] court's order is the only way to guarantee such security.

Trial Court Opinion, 10/8/15, at 6-7 (citations to record omitted) (emphasis in original).

In addition to Mother failing to supervise Ba.N., the trial court found that Mother failed to advise Father when Ba.N. was pregnant and when Ba.N. was in labor to deliver her child. With respect to Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, the trial court found as follows.

> Mother did not encourage her then sixteen-year-old[,] Ba.N.[,] to reveal to her Father that she was pregnant. Mother instructed at least one of the children, all of whom evidently knew of the pregnancy before Father, not to tell him. Mother reasoned that the daughter wanted to tell Father on her own terms. The [trial c]ourt was dubious of this line of thinking. For one, Father was the sole legal custodian, and Ba.N.'s medical needs were exclusively in his domain. Father ultimately found out several months into the pregnancy. Ba.N. was not without medical care during those months, however, as Mother apparently enrolled the child in a free clinic, a violation of Father's legal custody rights. Mother also failed to tell Father when their daughter went into labor. At that time, there was general testimony that Father and Ba.N. were not on the best of terms. Mother had an opportunity to include Father, or at least encourage Ba.N. to include Father during the birth of her child, but she did not.

- 15 -

Trial Court Opinion, 10/8/15, at 5 (citations to record omitted). Mother's and Father's testimony supports the trial court's findings.

With respect to Section 5328(a)(3), the parental duties performed by each party, the trial court found that Father "is the more responsible parent." Trial Court Opinion, 10/8/15, at 8 (citation to record omitted). Importantly, the trial court found, "Father testified very credibly about his parenting of the children, specifically with their education." *Id.* (citation to record omitted). In contrast, with respect to Mother's parenting, the trial court found as follows.

> Apart from the supervision issues discussed above, Father testified that when the children returned from Mother's custodial time (prior to the suspension of overnights) it would take them a few days to get back on track. He testified that the [children] would often be tired, that they had a hard time concentrating, and that Mother's house had few rules. There are still other instances that cause this [c]ourt to question Mother's parental decisions. For example, Father testified that Mother bragged to him that she made allegations to the agency in charge of Father's governmental assistance, which resulted in his loss of benefits. It also resulted in the loss of the children's health insurance.

*Id.* at 9 (citations to record omitted). The trial court's findings are related with respect to Section 5328(a)(4), the need for stability and continuity in the child's education, family life, and community life, as follows.

> [T]h[e trial c]ourt was also able to find that Father provided more stability and continuity for the children, especially when it comes to their education. The [trial c]ourt finds the children have excelled in

- 16 -

no small part due to stability and continuity that is created by Father's close attention paid to his parental duties.

***Id.*** Father's testimony supports the trial court's findings.

Q. [H]ow do your children do in school? What are their grades like?

A. They're pretty good. I'm fairly proud of them. [] [S]ome are better than others. [Br.N.], honor roll, As, Bs. .. [Mo.N.] is probably the biggest challenge[d] one of the group. But I think she's kind of learning her spot and her capabilities and stuff of that sort, and we're working with her on that.

N.T., 7/30/15, at 48.

Father testified with respect to the children's 2014-2015 report cards, which were introduced into evidence and indicated that Mo.N. and Ma.N. had academic struggles, but that Ba.N., Br.N., and G.N. did not struggle. ***Id.*** at 50-54; Exhibit M. He explained that Mo.N.'s worst grade on the report card "is the B, which [means], …. 'Student is making (inaudible) progress towards proficiency and may need reinforcement.' And … once again, that's [Mo.N.]. We got to work with her a little more."[7] ***Id.*** at 53; Exhibit M. Regarding Ma.N., Father explained that she has an Individualized Education Plan, but that she "has done excellent this year … and she really worked hard this year." ***Id.*** at 52. Ma.N.'s grade point average was a 3.17. ***Id.***

_____

[7] Further discussion explained the report card system which was not an A, B, C, D, grading system but rather P for proficient, D for developing, B needing reinforcement, and N area needs to be strengthened. ***Id.*** at 53.

Further, Father testified with respect to three separate e-mails from the teachers of Ma.N., Br.N., and G.N., indicating that they were doing well during the last school year. *Id.* at 64-67; Exhibits O, P, Q.

With respect to Section 5328(a)(5), the availability of extended family, the trial court found as follows.

> [B]oth parents offer access to extended family, but the custody arrangement would not infringe on that access. Father's parents reside close to him and the children. He testified that they are very involved. Mother testified her siblings and parents live in Ohio. Testimony revealed that the children were not particularly close with Mother's extended family. In fact, none of the subject children had ever even met Mother's father. Mother claimed that this is because of her limited custodial time without recognizing that her time was not always so limited.

Trial Court Opinion, 10/8/15, at 9 (citations to record omitted).

In contrast to the trial court's finding, Mother testified as follows.

> Q. What other family do you have close by that would be available with your children?
>
> A. [B]oth of my sisters, my father. My other brother lives in Ohio.

N.T., 7/30/15, at 130. Although the trial court improperly found that the majority of Mother's extended family lives in Ohio, the trial court's remaining findings related to this factor are supported by the testimonial evidence. Based on the totality of the record evidence, we deem harmless the trial court's factual error in this regard.

With respect to Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the trial court found as follows.

> Father is extremely attentive to the children's educational needs, and when enabled, was also very caring for Ba.N. during her pregnancy. He was cognizant of Ba.N.'s emotional well-being in light of this tumultuous time in her life, as well as the impact it would have on the younger children. Mother might argue that her limited time prevents her from demonstrating the same. The [trial c]ourt notes first that it was Mother's direct lack of supervision which warranted the suspension of her time[,] and second[,] that Mother did not produce any real, persuasive evidence or testimony on the subject from prior to the custody suspension.

Trial Court Opinion, 10/8/15, at 11 (citations to record omitted). Upon review, the testimonial evidence supports the trial court's findings.

The trial court found significant the foregoing factors, made findings with respect to each, and weighed each factor according to the evidence before it. We further observe that the trial court considered Section 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgment, and found as follows.

> All the children articulated that they would like to see Mother more, but they had difficulty reasoning why and often said they did not know. Two of the children testified that Mother's household is more lenient. Ma.N. said, for example, her Mother would be more inclined to let her hang out with a boy, whereas her Father would be stricter towards it. G.N. testified that with his Father, it [is] "his way or the highway" but that his Mother is "not as tough."

Trial Court Opinion, 10/8/15, at 10. After hearing the *in camera* testimony of the children, the trial court concluded as follows.

> These preferences are not exactly well-reasoned, nor are they particularly mature. These children would like to see more of their Mother, but they would also like to see fewer rules. This statutory factor is but one factor for this very reason. Father's household has created an environment where the children have grown and thrived academically. The evidence of record shows this. Unfortunately, the testimony regarding the Mother's house illustrates something of the opposite. To be clear, while the children miss sleeping at Mother's, and while they might desire to spend a bit more time with her, they said nothing of changing primary custodians. Th[e trial c]ourt finds some time increase from the interim order is appropriate, which is why th[e trial c]ourt awarded Mother vacation time in the summer.

*Id.* We discern no abuse of discretion by the trial court with respect to the children's custody preference.

Based on the foregoing, we conclude the trial court did not abuse its discretion nor commit an error of law when it entered the underlying custody order. Accordingly, the trial court's August 10, 2015 order is affirmed.

Order affirmed.

Judge Bowes joins the memorandum.

Judge Jenkins files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2016